AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

| | | |
|---|---|---|
| United States of America<br>v.<br>Daniel LOPEZ-Garcia, aka<br>Carlos TERAN-Rojo<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No. H-18-1377M |

United States Courts
Southern District of Texas
FILED

AUG 24 2018

David J. Bradley, Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **August 23, 2018** in the county of **Harris** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(iii) | Alien Smuggling- Knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation. |

This criminal complaint is based on these facts:

SEE ATTACHMENT "A"

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ricardo Morales, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/24/2018

_____
*Judge's signature*

City and state: Houston, Texas

Frances Stacy, U.S. Magistrate Judge
*Printed name and title*

1

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ricardo Morales, being first duly sworn, depose and state the following:

1. I am a Special Agent, having been so employed since 2001 with the U.S. Department of Justice, Immigration and Naturalization Service (INS), further converted in 2003 to the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am presently assigned to the HSI Houston Human Smuggling Group, with investigative responsibility for cases in the Southern District of Texas- Houston Division. As an HSI Special Agent, my job and responsibilities include conducting investigations of violations of the immigration and customs laws of the United States, to include alien smuggling, pursuant to Title 8, United States Code, § 1324; and related offenses. I attended the Federal Law Enforcement Training Center at Glynco, Georgia, where I received training for accomplishing my criminal investigator duties. Furthermore, I also received training on a continuing basis for maintaining my proficiency pertaining to criminal investigator work.

2. This affidavit is made in support of the Criminal Complaint of Ismael RODRIGUEZ-Serrano, aka Onesimo RODRIGUEZ-Serrano (Hereinafter RODRIGUEZ-Serrano) and Daniel LOPEZ-Garcia, aka Carlos TERAN-Rojo (Hereinafter LOPEZ-Garcia). The facts contained in this affidavit are based upon information of my own personal knowledge, observations and/or facts related to me by other agents of HSI and/or other law enforcement personnel involved in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause for this arrest, the affidavit may not contain every fact known to me during the course of this investigation.

3. On August 22, 2018, the Houston Police Department (HPD) notified HSI Houston special agents that they received a complaint from a female in New Jersey that her brother had been kidnapped in Houston by his smugglers.

4. On the same day HSI Houston special agents contacted Guatemalan national Ilsia MAZARIEGOS-Salazar (Hereinafter ILSIA), who reported that her brother, identified as Guatemalan national Migdael MAZARIEGOS-Salazar (MIGDAEL), had been successfully smuggled to Houston, Texas by August 12, 2018, after arranging paying an $8,500 US dollar smuggling fee to smugglers in Guatemala. According to ILSIA, the smugglers reported that he was already in Houston but were requesting an additional $7,000 US dollars fee in order to release him, threatening her to pay the additional money or "MIGDAEL would be killed, chopped up into pieces and disappeared". ILSIA further added that a smuggler she identified as "EL SOBRINO" (THE NEPHEW) also told her that if she called police "they would kill him" and that "they had people everywhere". ILSIA also reported that she had spoken directly with MIGDAEL on telephone number (956) 599-8196 (Hereinafter TARGET NUMBER) initially on August 12, 2018, and subsequently on August 20, 2018. That day TARGET NUMBER was identified as an AT&T Wireless cellphone number. MIGDAEL was positively identified in HSI systems from a 2015 arrest by Border Patrol in Alice, Texas.

5. On August 23, 2018, HSI agents in New Jersey met with ILSIA and placed a monitored call to number (956) 599-8196. The unidentified male (Hereinafter UM) and ILSIA agreed that

2

a friend in Houston would contact UM later that day to arrange for a meeting to pay the $7,000 US dollars in exchange for MIGDAEL.

6. Based on the death threats made directly to ILSIA in regard to her brother MIGDAEL, On August 23, 2018, HSI Houston special agents arranged an exigent location service with AT&T Wireless and confirmed that the device associated with TARGET NUMBER was located in Houston, Texas. Surveillance was initiated and led HSI special agents to the Sunset Crossing Apartment Homes at 10630 Beechnut St, in Houston Texas.

7. Later that day, an HSI Houston undercover agent (Hereinafter UCA) contacted the TARGET NUMBER and arranged a meeting to make the exchange of the $7,000 US dollars for MIGDAEL. UM, utilizing the TARGET NUMBER, directed the UCA to the HEB supermarket at 10100 Beechnut St in Houston to make the exchange. HSI surveillance at the Sunset Crossing Apartment Homes observed a white Chevrolet Tahoe depart the apartments with three Hispanic males on board and followed it to the meeting location with the UCA. At the meeting location the UCA stood outside the Tahoe's driver door and engaged both the driver and the front passenger who directed him to board the vehicle to exchange the money. The UCA confirmed that MIGDAEL was in the back seat of the vehicle and subsequently signaled the surveillance agents to make the arrest. The UCA was forced to toss the currency from his hands into the vehicle and identify himself as a federal officer due to the driver and front passenger being extremely aggressive and uncooperative. Both the driver and the front passenger were arrested and MIGDAEL was detained for immigration violations.

8. Shortly after the arrests, HSI special agents conducted an exigent search for other possible hostages of apartment numbers 115 and 112 at the Sunset Crossing Apartment Homes that were identified during the surveillance. A search for hostages in apartment 115 resulted in the encounter of four additional illegal aliens and apartment 112 was found empty at the time with the front door completely unlocked. HSI special agents were forced to break into apartment 115 because the entrance door was dead-bolted and the windows were obscured. After securing entry into apartment 115 and securing the illegal aliens, agents observed that the windows were boarded up and obscured from the inside and the main door had a lock that was keyed both inside and outside.

9. All encountered subjects were transported to the Immigration and Customs Enforcement (ICE) Service Processing Center (SPC) for further processing and interviews.

10. At the SPC, the driver of the white Tahoe was identified as Mexican national Ismael RODRIGUEZ-Serrano and the passenger as Mexican national Daniel LOPEZ-Garcia. Both RODRIGUEZ-Serrano and LOPEZ-Garcia had previous encounters with Border Patrol agents in Texas.

10. At the SPC, agents interviewed Guatemalan national MIGDAEL, who stated that he travelled from Guatemala and through Mexico to join family in New Jersey in order work and to make a better living for his family. MIGDAEL stated that his sister ILSIA arranged a payment of approximately $8,500 U.S. dollars in advance to be smuggled into the U.S. MIGDAEL identified RODRIGUEZ-Serrano in a photographic lineup display as the driver of the vehicle in which he was being transported to the meeting in Houston when the police detained them. MIGDAEL stated that RODRIGUEZ-Serrano was the person in charge at the stash house he was

being held and also the driver that picked him up in Houston from the driver that transported him from the brush into Houston. MIGDAEL further identified LOPEZ-Garcia in a photographic lineup display as the other person in charge of the stash house in Houston where he arrived at since August 12, 2018. MIGDAEL further added that he was afraid he was going to be harmed when he was told he was going to be release and informed RODRIGUEZ-Serrano that he would not go anywhere without talking with his sister. MIGDAEL also stated that both RODRIGUEZ-Serrano and LOPEZ-Garcia were in charge of keeping food supplies at the stash house and both kept the illegal aliens locked into the apartment with the windows boarded up.

11. At the SPC, agents interviewed Guatemalan national Justo Rodrigo NOJ (Hereinafter NOJ), who stated that he travelled from Guatemala to get to Maryland to work and support his family financially. NOJ stated that his mother-in-law paid a smuggling fee of $15,000 U.S. dollars in full in Guatemala but that he was still being held against his will and was being extorted for an extra $2,300 US dollars. NOJ identified RODRIGUEZ-Serrano as the driver of the vehicle in which he was transported from McAllen to Houston, Texas, to the stash house he was detained at by police in Houston. NOJ also identified LOPEZ-Garcia as a stash house guard who also brought food.

13. At the SPC, agents interviewed Guatemalan national Pedro Gerardo GOMEZ-Veliz (Hereinafter GOMEZ-Veliz), who stated that he travelled from Guatemala to get to Florida, work and support his family financially. GOMEZ-Veliz stated that his uncle was paying a smuggling fee between $13,000 to $15,000 US dollars from which he still owed between $2,000 and $3,000 US dollars. GOMEZ-Veliz identified RODRIGUEZ-Serrano as the person who placed him in the stash house and took his cellphone away. GOMEZ-Veliz also identified LOPEZ-Garcia as the assistant to RODRIGUEZ-Serrano.

14. In an interview after his arrest and after waiving his constitutional rights, RODRIGUEZ-Serrano admitted to his role in running the stash house for a $250 US dollar payment per load of aliens. RODRIGUEZ-Serrano also admitted keeping the aliens locked in the apartment to prevent escapes because he had recently lost one alien and his boss charged him personally for the lost income.

15. Based upon the evidence gathered from the investigation, I believe there is probable cause to believe that Ismael RODRIGUEZ-Serrano and Daniel LOPEZ-Garcia violated Title 8, United States Code, Section 1324(a)(1)(A)(v)(I), conspiracy to transport and harbor aliens for commercial advantage or private financial gain.

/s/ Ricardo Morales
Special Agent Ricardo Morales
Homeland Security Investigations
Houston, Texas

Sworn and subscribed before me on August 24, 2018 and I find probable cause.

4

Frances Stacy
U.S. Magistrate Judge